UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOGESHKUMAR PATEL,<br><br>Plaintiff,<br><br>v.<br><br>LORI SCIALABBA, et al.,<br><br>Defendants. | Case No. 3:17-cv-00860-JD<br><br>**ORDER RE MOTION TO DISMISS**<br>Re: Dkt. No. 18 |

Plaintiff Yogeshkumar Patel, a U.S. citizen who pled guilty to a sexual offense against a minor, appeals a decision by United States Citizenship and Immigration Services ("USCIS") denying his petition for an immigrant visa on behalf of his alien wife, Maimi Murakami. Dkt. No. 1. USCIS denied Patel's petition pursuant to the Adam Walsh Act ("AWA"), which bars alien relative visa petitions by permanent residents and citizens convicted of sexual crimes against minors. 8 U.S.C. § 1154(a)(1)(A)(viii), (B)(i). Patel contends that the denial of the petition violates the ex post facto clause; is *ultra vires*; is arbitrary and capricious in violation of the Administrative Procedure Act ("APA"); and unconstitutionally burdens his fundamental right to marry.

**BACKGROUND**

The facts germane to the motion are not in dispute. In 2004, Patel pled guilty to a sexual offense against a minor under 18 U.S.C. Section 2422(b). He was sentenced to three years in prison followed by a three-year term of supervised release, and was required to complete sex offender treatment. Dkt. No. 1-1 at ECF pp.10-12.

Enacted in 2006 to "protect children from sexual exploitation and violent crime," the AWA substantially revised federal and state supervision of child sex offenders. Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248 (2006). Among other measures, the

AWA amended the Immigration and Nationality Act ("INA") to bar visa petitions for family members by a petitioner convicted of "a specified offense against a minor." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). These offenses include "[s]olicitation to engage in sexual contact," "[c]riminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct," and "[a]ny conduct that by its nature is a sex offense against a minor." 34 U.S.C.A. § 20911(7). A citizen convicted of an enumerated crime may only petition for a visa on behalf of an alien if "the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition . . . is filed." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). This petition process applies whether the intended alien beneficiary is a child or an adult. Dkt. No. 18-2 at ECF p.3 (includes spouse, fiancé(e), parent, brother, sister). The Secretary's discretion to review such petitions has been delegated to USCIS.

In 2007, USCIS issued informal guidelines to implement the AWA's no-risk determination. The guidelines require a petitioner to prove "beyond any reasonable doubt" that the petitioner "poses no risk to the intended adult beneficiary." Dkt. No. 18-2 (the "Aytes Memo") at ECF p.8. "[T]hat a petitioner's past criminal acts may have been perpetrated only against children or that the petitioner and beneficiary will not be residing . . . in the same household . . . may not, in and of themselves, be sufficient to convince USCIS that the petitioner poses no risk to the adult beneficiary." *Id.*

In 2008, USCIS issued an internal memorandum clarifying and amending the Aytes Memo. Dkt. No. 18-1 (the "Neufeld Memo"). The Neufeld Memo emphasized that findings of no risk "should be rare" "given the nature and severity of many of the underlying offenses and the intent of the AWA." *Id.* at ECF p.3.

In July 2013, Patel married Murakami, who is not a U.S. citizen. In August 2013, Patel petitioned USCIS for a visa on behalf of Murakami. USCIS asked Patel to submit information about the conduct underlying his 2004 guilty plea, and evidence demonstrating "beyond any reasonable doubt, that [Patel] pose[d] no risk to the safety and well-being of the beneficiary." Dkt. No. 1-1 at ECF p.21. Patel submitted the 2004 charging documents, indictment, plea agreement,

psychological evaluations, affidavits from himself and from Murakami, and letters of support from family and friends. *Id.* at ECF pp.21-22.

In December 2016, USCIS advised Patel that his submissions were insufficient and denied the petition. While noting considerable positive evidence in the submissions, USCIS concluded, with little explanation, that Patel offered only "limited evidence" of his rehabilitative efforts. *Id.* at ECF p.25. In equally cursory fashion, it discounted a recent clinical evaluation favorable to Patel as lacking a "collateral criminal document review," which in USCIS's view left "doubt in the determination that you pose no risk to the beneficiary." *Id.*

Patel sued to set aside the USCIS decision and grant the petition. USCIS moves to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief could be granted. Dkt. No. 18.

**DISCUSSION**

USCIS brings its motions under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(1), dismissal is appropriate if the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(6), dismissal is appropriate if the plaintiff fails to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). The complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). While the non-conclusory factual allegations of a complaint are accepted as true for Rule 12(b)(6) purposes, allegations of jurisdictional facts under Rule 12(b)(1) "are not afforded presumptive truthfulness; on a motion to dismiss for lack of subject matter jurisdiction, the court may hear evidence of those facts and resolve factual disputes where necessary." *Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014).

**I. JURISDICTION**

The discussion of the Rule 12(b)(1) jurisdictional challenge is organized by the complaint's claims. The first claim challenges the application of the AWA under the ex post facto clause of the United States Constitution. The second claim alleges that USCIS is not statutorily

3

authorized to implement a "beyond any reasonable doubt" standard for petitioners' showing of no risk. The third claim alleges that USCIS violated the Administrative Procedure Act ("APA") by promulgating unclear procedures for its adjudicators and by failing to follow said procedures in adjudicating Patel's petition. *See* Dkt. 21 at 15 (clarifying Patel's third claim). The fourth claim alleges the AWA has impermissibly infringed Patel's right to marriage.

"[A]gency actions are generally reviewable under federal question jurisdiction, pursuant to 28 U.S.C. § 1331. . . . [unless] any statute has deprived the federal courts of jurisdiction to review the particular agency action at issue." *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 687-88 (9th Cir. 2003).

The immediate question raised by the complaint is whether the AWA or another statute bars judicial review of Patel's claims. The AWA places no-risk determinations squarely within the Secretary's "sole and unreviewable discretion." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). In addition, a jurisdiction-stripping provision of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") states,

> Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . any other decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter [8 U.S.C. §§ 1151-1378] to be in the discretion of . . . the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title [relating to asylum].

8 U.S.C. § 1252(a)(2)(B)(ii). The AWA's grant of discretion to the Secretary is such a decision.

It light of these provisions, it might appear to be an easy matter to dismiss for lack of jurisdiction. But other factors lead to a more nuanced outcome.

Patel's first and fourth claims allege violations of his constitutional rights. "[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster v. Doe*, 486 U.S. 592, 603 (1988). This "heightened showing" is required "to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* (internal citation omitted).

*Webster* teaches that a broad grant of agency discretion does not necessarily manifest clear intent to preclude constitutional claims. In *Webster*, petitioner John Doe had been "consistently

4

rated" as "an excellent or outstanding employee" at the CIA for nine years. *Id.* at 594-95. After Doe revealed to the CIA that he was gay, the CIA director fired Doe pursuant to Section 102(c) of the National Security Act, which stated that "the Director of Central Intelligence, may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States." *Id.* at 615-16 (quoting 50 U.S.C. § 403(c)). Doe challenged his termination under both the APA and the Constitution. The Court found that while Section 102(c) barred judicial review of Doe's APA claims, "[n]othing in § 102(c) persuades us that Congress meant to preclude consideration of colorable constitutional claims arising out of the actions of the Director pursuant to that section." *Id.* at 603. Like Section 102(c), the AWA does not indicate that Congress meant to preclude judicial review of constitutional claims arising out of the Secretary's no-risk determinations.

Nor does Section 1252(a)(2)(B)(ii) of the IIRIRA preclude Patel's constitutional claims. As an initial matter, in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), the Supreme Court held that a similarly worded provision of the INA did not preclude judicial review of constitutional and statutory challenges. *McNary* concerned Section 210(e)(1) of the INA, which barred judicial review of "a determination respecting an application for adjustment of status." *Id.* at 491 (quoting 8 U.S.C. § 1160). Noting that Section 210(e)(1) referred specifically to "determinations," the Court found that Section 210(e)(1) precluded "review on the merits of a denial of a particular application" but not "challenges to INS' procedures and practices in administering the SAW program." *Id.* at 494. Like Section 210(e)(1), Section 1252(a)(2)(B)(ii) refers specifically to "decisions" committed by statute to the Secretary's discretion. Where Congress "could have easily used broader statutory language," the Court will not infer congressional intent to preclude constitutional claims. *Id.* Moreover, the Ninth Circuit has held that Section 1252(a)(2)(B) does not bar constitutional claims because "decisions that violate the Constitution cannot be 'discretionary.'" *Kwai Fun Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004). Consequently, the Court has jurisdiction to hear the first and fourth claims.

The same is true for the second claim alleging that USCIS is not statutorily authorized to impose a "beyond any reasonable doubt" standard on petitioners' showings of no risk. "Even if a

5

statute gives the Attorney General discretion . . . the courts retain jurisdiction to review whether a particular decision is *ultra vires* the statute in question." *Spencer*, 345 F.3d at 689 (Section 1252(a)(2)(B)(ii)); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). The Court has subject-matter jurisdiction over the second claim.

The third claim is a different matter. This claim alleges that USCIS violated the Administrative Procedure Act by acting arbitrarily and capriciously when (1) developing procedures by which adjudicators may implement the AWA, and (2) departing from those procedures in Patel's adjudication. *See* Dkt. No. 21 at 15. For purposes of Section 1252(a)(2)(B)(ii), "if the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable." *Spencer*, 345 F.3d at 691. Here, Section 1154 expressly commits the no-risk finding to the "sole and unreviewable discretion" of the Secretary. Consequently, the Court is powerless to review USCIS's procedures or any alleged departures from such procedures.

## II. PLAUSIBILITY

The question is now whether the remaining claims in the complaint meet the plausibility requirement of Rule 8. The first claim -- that the AWA was enacted after Patel's guilty plea and so imposes an unconstitutional retroactive punishment -- does not. The AWA addresses "dangers that arise postenactment," namely the risk of harm to alien relatives. *Vartelas v. Holder*, 566 U.S. 257, 271 n.7 (2012); *see also Reynolds v. Johnson*, 628 Fed. Appx. 497, 498 (9th Cir. 2015). That does not impermissibly inflict a retroactive punishment on Patel, and so the first claim is dismissed without prejudice.

The fourth claim alleging that USCIS has unconstitutionally infringed Patel's fundamental right to marry is also untenable. Patel is, in fact, married to Murakami. The AWA does not dictate who Patel may marry; it governs only the right to bring an immigrant spouse into the country. That is not a fundamental right protected by the Fifth Amendment's due process clause. "Even if we might 'imply' a liberty interest in marriage generally speaking, that must give way when there is a tradition denying the specific application of that general interest. . . . Although immigration was effectively unregulated prior to 1875, as soon as Congress began legislating in

6

this area it enacted a complicated web of regulations that erected serious impediments to a person's ability to bring a spouse into the United States." *Kerry v. Din*, 135 S. Ct. 2128, 2135 (2015). For this reason, other district courts faced with the same substantive due process challenge to the AWA have dismissed the claim. *See, e.g., Bakran v. Johnson*, 192 F.Supp.3d 585, 595-97 (E.D. Pa. June 28, 2016); *Suhail v. United States*, 2015 WL 7016340 at *10 (E.D. Mich. Nov. 12, 2015). Patel's fourth claim is dismissed without prejudice.

Patel's second claim that USCIS's guidelines are *ultra vires* also fails as a matter of law. "In determining whether an agency regulation is ultra vires, we apply the two-step *Chevron* analysis." *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 525 (9th Cir. 2012). *Chevron* requires courts to defer to an agency's interpretation of ambiguities in the statute it administers. *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 295 (2013). *Chevron* deference is not due here, Patel urges, because USCIS promulgated the "beyond a reasonable doubt" standard in informal guidance and memoranda, rather than through a notice-and-comment rulemaking procedure.

*Chevron* deference is appropriate "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). Generally, agency interpretations such as "opinion letters[,] . . . policy statements, agency manuals, and enforcement guidelines . . . lack the force of law [and] do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). However, while "the overwhelming number of our cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication," under certain circumstances, *Chevron* deference is appropriate "even when no such administrative formality was required and none was afforded." *Mead*, 533 U.S. at 230-31. If *Chevron* deference is not due, agency interpretations may still, under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), "merit some deference whatever [their] form, given the specialized experience and broader investigations and information available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *Mead*, 533 U.S. at 234 (internal quotations and citations omitted).

7

In *Mead*, the Supreme Court considered whether U.S. Customs Service tariff classification rulings merited *Chevron* deference. The Court found that Congress did not appear to have delegated authority to make rules carrying the force of law, because the authorizing statute did not "bespeak the legislative type of activity that would naturally bind more than the parties to the ruling, once the goods classified are admitted into this country." *Id.* at 232. Nor did it appear that the agency itself had "ever set out with a lawmaking pretense in mind," because USCS treated classification letters as lacking any binding effect on third parties. *Id.* ("Customs has regarded a classification as conclusive only as between itself and the importer to whom it was issued, and even then only until Customs has given advance notice of intended change. Other importers are in fact warned against assuming any right of detrimental reliance.") (internal citations removed).

The circumstances in this case resemble those in *Mead*. The AWA's grant of absolute discretion does not indicate legislative activity "naturally binding more than the parties to the ruling." Nor has USCIS manifested a "lawmaking pretense," because its no-risk determinations have no binding effect on third parties. On the other hand, the AWA vests the Secretary with sole and unreviewable discretion to make no-risk determinations, a factor that favors *Chevron* deference. *See Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1012 (9th Cir. 2002) (applying *Chevron* to policy statements where statute explicitly authorized agency to interpret the statute).

The Court need not resolve whether *Chevron* deference applies, because the USCIS standard survives even the more demanding scrutiny required by *Skidmore*. "*Skidmore* deference requires us to consider a variety of factors, such as the thoroughness and validity of the agency's reasoning, the consistency of the agency's interpretation, the formality of the agency's action, and all those factors that give it the power to persuade, if lacking the power to control." *Tualatin Valley Builders Supply, Inc. v. United States*, 522 F.3d 937, 942 (9th Cir. 2008). The "beyond any reasonable doubt" policy was implemented just six months after the AWA became law, and Patel has failed to show that it has been inconsistently interpreted since then or otherwise subject to attack on the *Tualatin* grounds. Patel does contend that the "beyond any reasonable doubt" standard the USCIS uses for the no-risk determination does not exist anywhere else "in the immigration context or in any civil context." Dkt. No. 21 at 12. But that is because the Adam

8

Walsh Act "was designed to be a 'comprehensive bill to address the growing epidemic of sexual violence against children' and to 'address loopholes and deficiencies in existing laws.'" *United States v. Tom*, 565 F.3d 497, 499 (8th Cir. 2009) (citing H.R. Rep. No. 109-218, pt. 1 (2005)). The "beyond a reasonable doubt" standard cannot be said to be *ultra vires* simply because it presents a higher bar than the standards of proof that are usually employed in immigration and civil contexts.

## CONCLUSION

Patel's third claim is dismissed with prejudice for lack of jurisdiction. The first, second and fourth claims are dismissed with leave to amend. An amended complaint must be filed by **December 29, 2017**.

**IT IS SO ORDERED.**

Dated: November 27, 2017

JAMES DONATO
United States District Judge